...

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF CONNECTICUT

Lucy Meseha,
        Plaintiff

v.                                              Case No.:

Roderick Bremby, Commissioner of
Social Services,
        Defendant.         May 25, 2011

## COMPLAINT

Introduction

    1. Ms. Meseha brings this action pursuant to the Title I of the Vocational Rehabilitation Act of 1973, 29 U.S.C. § 722(c)(5)(J), to appeal the Connecticut Department of Social Services, Bureau of Rehabilitation Services' failure to presume her eligibility for vocational rehabilitation services, even though she is a beneficiary of Social Security Disability benefits; failure to presume she is able to benefit from vocational rehabilitation services in pursuit of her vocational outcome; failure to determine she was eligible for vocational rehabilitation services; and for closing her vocational services application in violation of law.

Jurisdiction

    2. The Court has jurisdiction pursuant to 28 U.S.C. § 1331 because this action arises under the laws of the United States.

Parties

3. Lucy Meseha is a resident of the State of Connecticut and an individual with a significant disability within the meaning of 29 U.S.C. § 705(21) who applied for vocational rehabilitation services on February 21, 2008.

4. Roderick Bremby is the Commissioner of the Connecticut Department of Social Services.  He is sued in his official capacity as Commissioner for prospective injunctive relief only.  On April 15, 2011, Commissioner Bremby issued the final agency decision denying Ms. Meseha's claims for vocational rehabilitation services.

Facts

5. Lucy Meseha is a person with a significant disability within the meaning of 29 U.S.C. § 705(21) and an individual with a disability within the meaning of 29 U.S.C. § 705(20) because she has a mental impairment that results in a substantial impediment to employment and she can benefit in terms of an employment outcome from vocational rehabilitation services.

6. Ms. Meseha has been diagnosed with bi-polar disorder, borderline personality disorder and attention deficit disorder.  Ms. Meseha's significant disabilities seriously limit the functional capacities of communication,

interpersonal skills, work tolerance, and work skills.  These functional limitations result in a substantial impediment to securing, retaining, and regaining employment.

      7. Ms. Meseha needs vocational rehabilitation services in order to prepare for, secure, retain, or regain employment.

      8. On December 12, 2007, Ms. Meseha went to a Bureau of Rehabilitation Services (BRS) office and filled out an intake questionnaire.  She disclosed that she was a beneficiary of Social Security Disability Insurance (SSDI) benefits and Social Security Income (SSI).  Ms. Meseha stated, "I am able to work but I desperately need services on how to maintain that employment due to lack of interpersonal skills and problems with this affective disorder."  She requested vocational rehabilitation services.

      9. On February 21, 2008, Ms. Meseha signed an application for vocational rehabilitation services and notice of rights, and her case was opened.  This was Ms. Meseha's first application for vocational rehabilitation services with BRS.

      10. Ms. Meseha was 38 years old at that time, had a BA degree from the University of Connecticut in humanities and sociology, had studied nursing, had an emergency medical technician (EMT) certificate and a certified nurse aid (CNA) certificate.

11. On April 16, 2008, Ms. Meseha met with her vocational counselor who did not presume that she was able to benefit from vocational rehabilitation services nor did she presume that Ms. Meseha was eligible for vocational rehabilitation services, but instead, placed her in extended evaluation and wrote an extended evaluation plan.

12. On April 16, 2008 and at all times subsequent, Bureau of Rehabilitation staff and the commissioner did not have clear and convincing evidence that Ms. Meseha could not benefit in terms of an employment outcome from vocational rehabilitation services.

13. Five months later, on September 11, 2008, the BRS counselors decided to put job development on hold and have Ms. Meseha evaluated by a neuropsychologist.

14. Ms. Meseha continued go to school and work at various jobs as a home health aide in 2008 and 2009.

15. On November 13, 2008, Ms. Meseha was sent for an evaluation with Dr. James W. Pier, Ph.D., a neuropsychologist.  Dr. Pier found that Ms. Meseha was of average intelligence and verbal ability and able to benefit from college.  He found that she would have "difficulty" in any work that requires substantial interpersonal contact and communication and that "finding competitive employment, particularly

in the field of Allied Health, in which the client is likely to be successful is going to be a challenge."

16. Dr. Pier did not find that Ms. Meseha was "incapable of benefiting in terms of an employment outcome from vocational rehabilitation services due to the severity of the disability of the individual." 29 U.S.C. § 722(a)(2)(A).

17. BRS did not adequately explore Ms. Meseha's individual abilities, capabilities, and capacity to perform in work situations through the use of trial work experiences.

18. BRS had no basis or individualized evidence that Ms. Meseha could not take advantage of trial work experiences. In fact, Ms. Meseha, was working at the time. Dr. Pier did not state that Ms. Meseha was unable to take advantage of trial work experiences.

19. On April 14, 2009, Bureau of Rehabilitation staff informed Ms. Meseha that they were not going to provide vocational services but instead required her to attend partial hospitalization.

20. Ms. Meseha attended partial hospitalization at Backus Hospital from June 22, 2009 to July 10, 2009.

21. On September 14, 2009, BRS staff closed Ms. Meseha's file after they asserted they sent her three emails and placed one phone call without getting a response.

22. On September 16, 2009, Ms. Meseha emailed BRS staff, apologized for not getting back to them, informed them that she had started DBT therapy and requested to continue with her plan.

23. On September 16, 2009, Bureau of Rehabilitation Staff informed her that her case was closed and she had to call for an informal review to the district director.

24. On September 21, 2009, BRS staff returned a call from Ms. Meseha and told her to stay in therapy and contact BRS when her therapist felt she was ready for the next step.  BRS staff confirmed that the case was closed and that Ms. Meseha must request informal review or mediation.

25. On October 2, 2009, Ms. Meseha requested and informal review.

26. On November 30, 2009, BRS Western Region Director upheld the decision to close the case.

27. Ms. Meseha requested a fair hearing which was held on October 14, 2010.

28. The hearing officer upheld the decision to close the case in a written decision dated February 1, 2011.

29. Ms. Meseha appealed the hearing officer decision to the Commissioner who upheld the closure by letter dated April 15, 2011 and received by Ms. Meseha's counsel on April 20, 2011.

Legal Claims

30. BRS staff erred by not determining Ms. Meseha eligible for vocational services.  Ms. Meseha was eligible because she is an individual with a disability as defined by the act and she requires vocational rehabilitation services to prepare for, secure, retain, or regain employment.  29 U.S.C. § 722(a)(1).

31. BRS staff failed to presume that Ms. Meseha was eligible for vocational rehabilitation services as required by 29 U.S.C. § 722(a) and violated her right to vocational rehabilitation services by:

    a. failure to presume that Ms. Meseha was eligible for vocational rehabilitation services because she received SSDI and SSI, in violation of 29 U.S.C. § 722(a)(3), 34 C.F.R. § 361.42(a)(3), and United States Department of Education, Office of Special Education and Rehabilitation Services, Rehabilitation Services Administration Technical Assistance Circular RSA-

TAC-02-01 regarding assessments of individuals with significant disabilities (RSA TAC 02-01).

    b. making a determination that she was too disabled to benefit from vocational rehabilitation services without clear and convincing evidence that she was unable to benefit in terms of an employment outcome from vocational rehabilitation services due to the severity of her disability in violation of 29 U.S.C. § 722(a)(2)(a), 34 C.F.R. § 361.42(a)(2), and RSA TAC 02-01.;

    c. failure to follow the mandatory methods for determining Ms. Meseha was unable to benefit from vocational rehabilitation services, including the use of trial work experiences, in violation of 29 U.S.C. § 722(a)(2)(B), 34 C.F.R. § 361.42(e) and RSA TAC 02-01.

    d. failure to gather and demonstrate by clear and convincing evidence that she is unable to benefit from vocational rehabilitation services, in violation of 29 U.S.C. § 722(a)(2) and (3), 34 C.F.R. § 361.42(a) and RSA TAC 02-01.

    e. placing Ms. Meseha in extended evaluation without any evidence that she is unable to take advantage of trial work periods, in violation 29 U.S.C. § 722(a)(2)(B), 34 C.F.R. § 361.42(e) and RSA TAC 02-01.

f. closing her case without sufficient evidence that she "declined to participate" or was "unavailable to complete" an assessment without making a reasonable number of attempts to contact her, in violation of 34 C.F.R. § 361.44.

Prayer for Relief

32. Ms. Meseha requests declaratory relief that Commissioner violated her rights to vocational rehabilitation services by failing to presume she was eligible and able to benefit from vocational rehabilitation services.

33. Ms. Meseha requests a permanent injunction that the Commissioner issue new policies and regulations regarding presumption of eligibility for people who are beneficiaries of SSI and SSDI.

34. Ms. Meseha requests a permanent injunction ordering the Commissioner to reverse the hearing officer and find that she is presumed eligible for vocational rehabilitation services and to write an individual plan of employment for the vocational goal of allied health worker including all vocational services and service providers that Ms. Meseha needs to achieve her vocational goal.

s/Kirk W. Lowry
Kirk W. Lowry, #27850
Legal Director
Connecticut Legal Rights Project
P.O. Box 351 – Silver Street
Middletown, CT 06457

9

(860) 262-5035
Email: klowry@clrp.org


s/Karyl Lee Hall
Karyl Lee Hall, #19320
Connecticut Legal Rights Project
P.O. Box 351, Silver Street
Beers Hall
Middletown, CT 06457
(860) 262-5044
Fax: (860) 262-5035
klhall@clrp.org